**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

UNITED STATES OF AMERICA,

          Plaintiff,

    v.                                    Case No: 1:18-cr-20504

DECHAUN ANDREW SMITH,            Hon. Thomas L. Ludington

          Defendant.
_____/

**ORDER GRANTING MOTION TO SUPPRESS IN PART, DENYING MOTION FOR DISCOVERY, DENYING MOTION FOR EXTENSION, DENYING MOTION FOR RELEASE, DENYING MOTION TO EXCLUDE HEARSAY, AND RESETTING CASE MANAGEMENT DATES**

On July 25, 2018, an indictment was returned charging Defendant Dechaun Andrew Smith with one count of distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1), and one count of distribution of heroin in violation of 21 U.S.C. § 841(a)(1). ECF No. 1. Defendant was detained pending trial. ECF No. 5. On September 23, 2018, Defendant filed a motion seeking bond pending trial. ECF No. 16. The Court heard the motion for bond on October 9, 2018. Two additional telephone status conferences were conducted on October 18 and 24 regarding Defendant's assertion that he was regularly and legitimately employed. The Court also heard additional argument on October 31, 2018. The motion was denied for the reasons stated on the record. ECF No. 20.

**I.**

Defendant filed five motions between November 25 and December 18, including: motion to suppress evidence (ECF No. 22), motion for discovery (ECF No. 23), motion for extension of time (ECF No. 24), motion to exclude hearsay evidence (ECF No. 25), and emergency motion

for immediate release (ECF No. 31). The government responded to all motions. Defendant filed a reply to the government's response to the motion for release, the motion for hearsay, and the motion for discovery. The replies were untimely. *See* L.R. 7.1(e); LCrR 12.1. The government filed a superseding indictment on January 23, 2019. A hearing on the motions was held on January 30, 2019. The motions will be addressed in turn.

**A.**

Defendant moves to suppress statements obtained from Defendant in violation of the fifth and sixth amendments. On June 28, 2018, BAYANET (a multijurisdictional enforcement team consisting of officers from multiple counties) allegedly conducted a controlled buy from Defendant and then arrested him at the Soaring Eagle Casino parking lot. In his motion, Defendant provided the following narrative of events:

> At the time of the arrest, BAYNET officers did not announce themselves as police and had their guns drawn on Mr. Smith. During the transport of Mr. Smith to the police department, he was told by the transport officer that "Niggers should stay in their city." He was also told to agree with all of the questions and "you might make it." He was further told that he was being brought to the police department because they thought that he was different than the others. Mr. Smith was asked questions by the transport officer without advising him of his Miranda rights. Mr. Smith was placed in an interrogation room with his hands handcuffed behind his back. The interrogation was audio and videotaped. Before the interrogation started, Mr. Smith asked that the handcuffs be loosened since his right arm/shoulder were hurting. Instead of loosening the cuffs, the officers appear to have tightened them. The interrogation started and Lieutenant Rice read Mr. Smith Miranda warnings. At 15:01 on the video, Mr. Smith asked for an attorney. Lieutenant Rice then stated that they could not talk to him anymore since Mr. Smith invoked his right to counsel. Thereafter, Lieutenant Rice states to Mr. Smith that "he's hit." *After, at 18:32 on the video, Mr. Smith waives his right to counsel and starts speaking to the officers*. Mr. Smith did not sign the waiver of his Miranda warnings (see attached sheet).

Mot. at 3 (emphasis added).

Defendant contends that the statements were obtained in violation of his *Miranda* rights. In response, the government does not address this contention, but explains that it does not intend

to introduce the statements other than for the purpose of impeachment of the Defendant. ECF No. 27. Statements obtained in violation of a defendant's *Miranda* rights may not be used in the prosecution's case in chief, but are nevertheless admissible for the purpose of impeachment. *Harris v. New York*, 401 U.S. 222 (1971). Defendant advances no argument to the contrary. Accordingly, the motion to suppress will be granted in part. The statements will be excluded from the prosecution's case in chief but may be admissible for the purpose of impeachment.

**B.**

Defendant also filed two motions regarding a gentleman he believes to be known as Mr. Brode. According to Defendant, Mr. Brode is the cooperating individual who BAYNET used to perform the alleged controlled buy with Defendant. Defendant also asserts that Mr. Brode died in August, 2018. The government does not confirm whether Mr. Brode was the cooperating individual, though they acknowledge that their cooperating witness did pass away and will not be testifying at trial. Indeed, the government acknowledges that they have not provided the defense with any information regarding the identity of the cooperating individual.

Defendant first seeks discovery of "all information that the government has regarding Mr. Brode." ECF No. 23. Federal Rule of Criminal Procedure 16 requires the government, upon a defendant's request, "to permit the defendant to inspect and to copy" evidence within the government's control which is, *inter alia,* "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). "Rule 16 is intended to prescribe the minimum amount of discovery to which the parties are entitled, and leaves intact a court's discretion to grant or deny the broader discovery requests of a criminal defendant." *United States v. Richards,* 659 F.3d 527, 543 (6th Cir.2011) (citation and internal quotation marks omitted). To be helpful or material to the

defense, evidence need not rise to the level that would trigger the Government's obligation under *Brady v. Maryland. United States v. Amawi*, 695 F.3d 457, 471 (6th Cir. 2012).

The Supreme Court has held that this rule applies "only to 'shield' claims that refute the Government's arguments that the defendant committed the crime charged.'" *United States v. Pirosko*, 787 F.3d 358, 367 (6th Cir. 2015); *United States v. Robinson,* 503 F.3d 522, 531–32 (6th Cir. 2007) (quoting *United States v. Armstrong,* 517 U.S. 456, 462, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996)); *see also United States v. Lykins,* 428 Fed.Appx. 621, 624 (6th Cir.2011) ("In assessing materiality, we consider the logical relationship between the information withheld and the issues in the case, as well as the importance of the information in light of the evidence as a whole.").

Defendant is seeking information regarding: 1) Mr. Brode's contact with BAYNET about the alleged transaction; 2) how BAYNET turned Mr. Brode into an informant; 3) how reliable he was as an informant; 4) how long he acted as an informant; 5) whether he was paid; 6) whether he was working for BAYNET in exchange for a sentence reduction; 7) whether he was under pressure or coercion from the government to cooperate; 8) whether he has a past connection to drugs; 9) whether "Mr. Brode implicated Mr. Smith in other drug transactions between eachother." Mot. at 1-5.

Defendant asserts that the answers to all of these questions could yield exculpatory evidence that they might wish to use in cross examining the BAYNET police officers who supervised the controlled purchase. Defendant is charged with knowingly and intentionally distributing cocaine base and heroin on June 28, 2018. *See* ECF. No. 1. If, as Defendant contends, the cooperating witness is deceased, the government will not be able to use the cooperating witness's testimony to establish the elements of the offense. The motivations and

reliability of the cooperating witness thus have no apparent relevance to the question of whether Defendant knowingly and intentionally distributed cocaine base and heroin to the cooperating witness on June 28, 2018. Evidence regarding the communication between Defendant and the cooperating individual leading up to the alleged transaction could potentially be relevant to an entrapment defense. Notably, however, defense counsel indicated at the hearing that she has no intention of pursuing an entrapment defense. The motion for discovery will be denied.

Defendant also moves to exclude as hearsay all statements by Mr. Brode on the videotape and/or to BAYNET officers. ECF No. 25. Importantly, it is not clear that Mr. Brode was in fact the cooperating witness. The government has not identified the cooperating witnesses. Nor is it clear that the government will offer any statements of the cooperating witness, what those statements will be, or for what purpose those statements will be offered. Hearsay is a statement made by a declarant, other than while testifying at the current trial or hearing, offered to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Without knowing the declarant, the statement, or the purpose for which it is offered, it is impossible to determine whether the statement is hearsay. Therefore, the motion to exclude hearsay evidence, at least at this juncture, will be denied.

## C.

Defendant also moves for an extension of time to file certain motions. ECF No. 24. Defendant explains as follows:

> If the Court grants the motion for discovery, in whole or in part, then the defense will get additional information, which could lead to a need to file additional motions. In addition, the AUSA has not indicated whether he will present "other bad acts" testimony under FRE 404(b). If the prosecutor does decide to try to present testimony under 404(b), Defendant may need to file a motion to limit or exclude such testimony/evidence.

Mot. at 1. The motion for discovery is denied, as explained above. The government also indicated that it has no intention to introduce 404(b) evidence into its case in chief. Defendant is free to renew its motion if and when the government seeks to introduce 404(b) evidence. The Court will not extend the motion deadline to accommodate a hypothetical motion, the filing of which will be triggered by a hypothetical event.

**D.**

Defendant also filed an "emergency motion for immediate release." ECF No. 31. Defendant argues that he is entitled to immediate release because the Michigan State Police Crime Lab report (dated Dec. 12, 2018) shows that the amount of cocaine base is 27.3 grams, and not 28 grams as charged in the indictment.[1]

Distribution of 27.3 grams of cocaine base is nevertheless a violation of 21 U.S.C. 841(a). Moreover, Defendant overlooks that the indictment also includes a second count for distribution of heroin. The crime lab report does not absolve the Defendant of liability, as he appears to contend in his motion. The government also issued a superseding indictment on January 23, 2019 which corrected the error.

---

[1] At oral argument, Defense counsel argued that the timing of the crime lab report and her alleged lack of notice thereof amounted to a due process violation. Defense counsel did not sufficiently articulate what due process right was violated, or why the remedy for the alleged violation would be immediate release from prison. More importantly, her allegations regarding lack of notice are belied by the record. Although the initial field test yielded 28 grams, subsequent testing at the Michigan State Police crime lab yielded only 27.3. The report is dated December 17, 2018. ECF No. 31 at PGID 182. The next day, on December 18, counsel for the government emailed defense counsel noting "I just received the laboratory report from the Michigan State Police regarding Mr. Smith. The cocaine base came in at a w[e]ight of 27.30 grams. I indicted Mr. Smith for possessing in excess of 28 grams of cocaine base. As a result, the charge will need to be amended to remove reference to a minimum amount. Since the amount of cocaine base appears to be under 28 grams the mandatory minimum is no longer applicable. This may change your client's position as it relates to considering a plea . . ." Thus, within one day of receiving the lab report, counsel for the government alerted defense counsel to the new information and explained the impact of the new information on Defendant's potential sentencing exposure. Thereafter, he filed a superseding indictment on January 23 reflecting the change. ECF No. 36.

Nor does the reduced quantity affect the Court's bond determination, as Defendant argues for the first time in his reply (which itself was untimely).[2] The government acknowledges that the reduced quantity eliminates the five-year mandatory minimum and reduces the maximum sentence to 20 years. Defendant therefore concludes that, because there is no longer a mandatory minimum, "there is no presumption case . . . this case is now simply a guidelines case . . . the government fails to explain how there is a presumption that no condition or combination of conditions will reasonably assure the appearance of Mr. Smith and the safety of the community." Reply at 2.

Defendant is incorrect that the removal of the mandatory minimum eliminates the presumption against bond. To the contrary, pursuant to 18 U.S.C. 3142(e)(3)(A), such a presumption exists if there is probable cause to believe the defendant has committed "an offense for which a *maximum term of imprisonment of ten years* or more is prescribed in the Controlled Substances act." (emphasis added). It is the potential statutory maximum sentence, not the minimum sentence, that determines whether there is a rebuttable presumption against bond.

In his reply, Defendant also presented additional evidence of his income. Defendant explains:

> Attached are the check stub payments from AAA showing that Mr. Smith was in fact gainfully employed as the caretaker for his disabled son. These stubs represent the time period from December, 2016-June 27, 2018. The Court asked for this information at the last bond hearing. These check stubs show a legitimate source of income for Mr. Smith. Mr. Smith can resume his caretaker duties for his young disabled son if the Court grants him a bond.

---

[2] The motion for emergency release did not seek a new bond determination, but rather argued that Defendant "should be immediately released since the indictment as charged is legally flawed and cannot be substantiated by the evidence." Mot. at 3. Defendant did not suggest that the revised quantity had any potential impact on the bond determination. That issue was raised in the governments response, at which point Defendant re-directed the focus to the bond determination.

Reply at 4. As explained above, the reply was untimely and the original motion did not ask the court to revisit its bond determination. Thus, it is unclear that the request for bond is properly before the Court. However, even treating the original motion as a motion for bond, and entertaining the untimely reply, the Court's conclusion does not change. The AAA payments Defendant receives for taking care of his disabled son do not establish legitimate and regular employment within the community and do not rebut the presumption that no condition or combination of conditions will reasonably assure the appearance of Mr. Smith and the safety of the community.

**II**.

Accordingly, it is **ORDERED** that the motion to suppress (ECF No. 22) is **GRANTED** in part, as set forth above.

It is further **ORDERED** that the motion for discovery (ECF No. 23), motion for extension of time (ECF No. 24), motion to exclude hearsay (ECF No. 25), and motion for immediate release (ECF No. 31), are **DENIED**.

It is further **ORDERED** that the dates in this matter are rescheduled as follows:

- Plea Cutoff: February 27, 2019
- Final Pretrial Conference: March 6, 2019 at 4:00pm
- Jury Trial: March 19, 2019 at 8:30am

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: February 21, 2019

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 21, 2019.

                                                  s/Kim Grimes
                                                  KIM GRIMES